## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2017, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher M. Konkle,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

January 31, 2017

Court of Appeals Case No.
78A05-1606-CR-1442

Appeal from the Switzerland Circuit Court

The Honorable W. Gregory Coy, Judge

Trial Court Cause No.
78C01-1307-FC-201

**Brown, Judge.**

[1] Christopher M. Konkle appeals his sentence for three counts of sexual misconduct as class C felonies and five counts of trafficking with an inmate, one as a class C felony and four as class A misdemeanors. Konkle raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

## Facts and Procedural History

[2] Between May 22, 2013, and July 26, 2013, Konkle knowingly or intentionally engaged in deviate sexual conduct with J.B., T.H., and B.W., inmates at the Switzerland County Jail where Konkle was a jailer. On or about July 25, 2013, without prior authorization from the Switzerland County Sheriff, Konkle knowingly or intentionally delivered a cell phone to inmate J.B. and tobacco products to inmates J.B., T.H., K.T., and B.W.

[3] On July 29, 2013, the State charged Konkle with three counts of sexual misconduct as class C felonies and five counts of trafficking with an inmate, one as a class C felony and four as class A misdemeanors.[1] On May 23, 2016, the court held a hearing at which Konkle pled guilty as charged. The court then proceeded to sentencing and noted a presentence investigation report ("PSI") had been filed, and the parties indicated they did not have any additions or corrections. Konkle presented documentary evidence and testimony regarding the health of his mother and her brother. Konkle's mother testified that her

---

[1] On August 5, 2013, the State filed an amended information with respect to the charge of trafficking with an inmate as a class C felony.

brother had been living with Konkle, that Konkle had taken care of him, and that Konkle's incarceration would be a hardship.

[4] Konkle testified that he consistently found work after he was discharged from the Sheriff's Department, that he was a certified nursing assistant (CNA), that he worked forty hours per week at "an alzheimers, specialized nursing facility and skilled nursing plus rehab and assisted living." Transcript at 26. He stated that he had met with Ripley County Community Corrections and that it had approved him for placement. When asked about his guilty plea and his acceptance of responsibility, Konkle testified "[t]he situation, I handled it wrong," "I should have came to my immediate supervisor when it all started," "I felt that I was at the lowest point in my life with what was said to me and I tend to keep up a strong front for those that I work for and hide it," and "I realized my wrongdoing and should have made those amends and should have came to somebody much earlier." *Id.* at 29. He indicated that, when he was interviewed, he immediately confessed and was cooperative. On cross-examination, Konkle indicated that he had his CNA license for eleven or twelve years, that it has to be renewed every two years, and that he had not reported the charges he was facing to the licensing agency.

[5] The court asked if he was responsible to oversee the jail inmates and make sure they were relatively safe, and Konkle responded affirmatively. The court asked "some of these favors that were exchanged, did you ever receive money from these people for letting them use the phone or giving them tobacco products," and Konkle answered "[o]ne of the family members sent me money to go

purchase cigarettes and take them in," "[t]hat was [K.T.'s] wife," that "also, [B.W.] had money sent to me to purchase these items also." *Id.* at 34. The court stated "[n]ow when you were doing this job, you were in an isolated situation with these inmates, right, you had the ability to be with them one on one" and "[t]here weren't other people standing around when you were engaging in these acts with these people were they," and Konkle replied "[n]o." *Id.* at 35. When the court asked if it was true that Konkle would take the inmates into an area where there were no cameras, Konkle testified "[n]o it was in the segregation and there were no cameras inside the segregation cell." *Id.* The court asked "[y]ou did it where you knew nobody would see you doing it," and Konkle replied "I was in there with them when I would be handing them a mop or something to clean up, I would be in there with them and they would come around," "I honestly don't know why I didn't call out for help, I didn't confront it, I just basically shut down," and "I was on auto pilot that I wanted to get out of here and I just wanted to go back to the control room." *Id.* at 36.

[6]     Konkle's counsel requested "either probation or a mixed sentence with Community Corrections" to allow Konkle to continue to work. *Id.* at 37. The prosecutor argued that placing Konkle on home detention would not take into account the seriousness of the offense and the extreme control he had over the inmates. Konkle's counsel replied that the fact Konkle was a service provider in the jail is an element of the offense and should not be taken into consideration as an aggravator. The recommendation of the probation officer set forth in the PSI was that Konkle be sentenced "to four (4) years, all executed except for

time served of two (2) actual/four (4) good time days on in home detention."
Appellant's Appendix, Volume 3, at 8. The court took the matter under
advisement.

[7] On May 25, 2016, the court reconvened and recited its findings and sentence.
It found that mitigating circumstances included the following: the crimes were a
result of circumstances not likely to recur and Konkle no longer works in the
jail and was immediately discharged from his employment when he confessed
to the crimes; he has no history of criminal activity; he is likely to respond
affirmatively to probation or short term imprisonment; his attitude indicates he
is unlikely to commit another crime; his imprisonment will result in undue
hardship to him or his family; he has saved taxpayers the cost of a trial by
entering a plea of guilty and accepting responsibility for his actions; he
cooperated when initially confronted with the allegations by law enforcement;
he is employed and has been steadily employed since his arrest; he has
references from friends and co-workers which indicate he is dedicated in his
work as a CNA and restorative therapy assistant; he had a difficult childhood,
his parents divorced when he was seventeen, and his father was an abusive
alcoholic; he suffers from anxiety and depression; and based on his age and the
fact this is his only criminal case, he appears to be at low risk to reoffend. The
court found the aggravating circumstances included the following: Konkle was
in a position of care, custody or control of the victims of these crimes; his
crimes involve more than a single incident and multiple victims; the victims
were bribed or manipulated to cooperate with Konkle in order for him to obtain

sexual favors; a victim indicated the actions happened numerous times and Konkle told him no one would believe his word over Konkle's word; the statements by the victims establish that the harm suffered by them was significant and greater than the elements necessary to prove the offenses; Konkle received money for his actions; and the number of charges is less than the number of incidents of criminal activity reported by the victims. The court found that the aggravating and mitigating circumstances balanced and that the sentences imposed should be served concurrently. It sentenced him to four years for each of his class C felony convictions and one year for each of his class A misdemeanor convictions and ordered that two years of the sentence be served in the Department of Correction and two years be served on home detention.

## *Discussion*

[8] The issue is whether Konkle's sentence is inappropriate in light of the nature of the offenses and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Relief is available if, after due consideration of the trial court's sentencing decision, this court finds that in its independent judgment, the sentence is inappropriate in light of the nature of the offense and the character of the

offender. *See Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Id.* (citation omitted). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* (citation omitted).

[9]     Konkle argues that he had no prior criminal history, that he was evaluated as a low risk to reoffend, that the probation office recommended that he serve a four-year executed sentence on community corrections, and that he had already communicated with and received verification that he qualified for supervision by Ripley County Community Corrections. He argues that he was suitably employed, provided in-home care for his uncle, and helped care for his mother. He further argues that the statements of the inmates should be viewed in light of the fact that they had ulterior reasons for wanting Konkle incarcerated, that two of the inmates were found in possession of correspondence with Konkle that were sexual in nature, and that the victims of his crimes were voluntarily participating inmates who traded him for favors and possessed keepsake correspondences. He argues that the nature of his crimes and his character warrant the imposition of a fully suspended sentence.

[10]    The State maintains that Konkle's sentence is far more lenient than the maximum sentence he could have received, that Konkle repeatedly engaged in deviate sexual conduct with three jail inmates who were under his supervision,

he forced the inmates to submit to the sexual conduct in an area that he knew had no camera surveillance, he took additional steps to conceal his crimes by telling one of his victims that no one would believe him, his conduct had a significant lasting impact on his victims, and that, in return for the inmates' submission, he provided them with cigarettes and a cell phone.

[11] Ind. Code § 35-50-2-6 provides that a person who committed a class C felony shall be imprisoned for a fixed term of between two and eight years, with the advisory sentence being four (4) years, and that the court sentenced Konkle to four years for each of his class C felony convictions and ordered that two years of the sentence be served on home detention and that all of his sentences be served concurrently.

[12] With respect to the nature of the offenses, the record reveals that Konkle knowingly or intentionally engaged in deviate sexual conduct with J.B., T.H., and B.W. while they were inmates at the Switzerland County Jail and while Konkle was employed at the jail. Konkle also knowingly or intentionally delivered a cell phone to inmate J.B. and tobacco products to inmates J.B., T.H., K.T., and B.W. Konkle indicated he was responsible for overseeing jail inmates and making sure they were safe, that he received money to purchase items for the inmates, and that his actions with the inmates occurred in a segregation area or cell where there were no cameras. In his victim impact statement attached to the PSI, B.W. stated that Konkle "would give us cigarettes after we let him do it." Appellant's Appendix, Volume 3, at 12. T.H. stated in his victim impact statement that sometimes he cannot sleep at night

and that the other inmates made fun of him. J.B. stated in his victim impact statement that he has severe anxiety about the situation, was still having trouble sleeping, had been having recurring nightmares about the things Konkle said and did to him, and that Konkle's actions "happened numerous times and his advances became progressively sexual to where I wanted to come forward but he told me no one would believe my word over his." *Id.* at 14.

[13] With respect to the character of the offender, we note that Konkle pled guilty as charged. Konkle's mother testified about her health and the health of her brother, that Konkle had cared for her brother who had been living with him, and that his incarceration would be a hardship. Konkle testified that he was employed as a CNA and was consistently employed and that he worked forty hours per week at a nursing and assisted living facility. He further indicated that he immediately confessed and was cooperative and that Ripley County Community Corrections had approved him. The PSI indicates that Konkle reported working for approximately six different employers since he was fired from his job with the Switzerland County Sheriff, that he was diagnosed with depression and anxiety in 2011 which have progressed during the pendency of this case, and that his father was an abusive alcoholic. The PSI also states that Konkle's risk assessment score using the Indiana risk assessment system places him in the low risk to reoffend category. The probable cause affidavit stated that handwritten letters of graphic sexual content addressed to two inmates were discovered in the bunk area and that Konkle had stated that he authored the letters.

After due consideration, we conclude Konkle has not met his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character.

## *Conclusion*

For the foregoing reasons, we affirm Konkle's aggregate sentence of four years with two years served on home detention.

Affirmed.

Vaidik, C.J., and Bradford, J., concur.